DECISION
Plaintiffs appeal Defendant's disqualification of Plaintiffs' property, 2.03 acres, from designated forestland special assessment. A telephone trial was held Tuesday, April 21, 2009. Michael Saarheim (Saarheim) appeared on behalf of Plaintiffs. L. Catherine Harper (Harper), Senior Appraiser, appeared on behalf of Defendant.
 I. STATEMENT OF FACTS
On July 16, 2008, Defendant amended its letter dated June 30, 2008, notifying Plaintiffs "that the special assessment of 2.03 acres of designated forestland * * * [was] disqualified" because the "land [was] no longer in a qualifying use." (Ptfs' Compl at 3 (emphasis in original).)
Saarheim testified that Plaintiffs request that the "land remain in its historical status" as forestland special assessment "while growing timber for harvest." He testified that Plaintiffs did not request that the land be removed from the "program." Saarheim related that the land was "planted" in the "1970s," and "last harvested in the "70s" except for the clearing of "downed trees" resulting from "December, 2008 storm damage." He testified that the subject property is "not in a residential state," and there are "no structures" on the land. Saarheim's letter dated April 15, 2009, stated that Plaintiffs "own and operate a small sawmill, *Page 2 
employing 3-6 employees and have logging equipment to harvest trees with, which [they] have done." (Ptfs' Ltr at 1, Apr 15, 2009.)
Saarheim and Jim Capellen, CF, wrote an Oregon Forest Stewardship Plan (Plan) for the subject property.[1] The purpose of the Plan dated January 12, 2009, stated:
 "Our plan for the property is to grow timber for the purpose of future select harvest. We enjoy the forest setting and the buffer to our adjoining property that it provides. The previous owner managed the land for growing timber and replanted after the property had been last logged in the early 1970s. It was sold to us and we intend to manage it as a forest. We are currently allowing the timber to mature."
(Plan at 3.)
The Plan described the subject property as "1 stand," "2.03 acres," "fully stocked" with "young Hemlock and Spruce, minor Alder — result of natural regeneration following 1970s logging." (Id. at 6.) The Plan stated that the "[p]roperty (stand) is adjacent to land owned by Oregon Dept. of Forestry" and "recommend[ed] management continue — passive annual practice with thinning for stand density and removal of fire wood to remove excess fiber and control excess stocking — minimal wild fire potential." (Id. at 8, 13.) Harper challenged the Plan's statement that all 2.03 acres are "fully stocked." She testified that, after "walking the property" and "[u]sing the computerized planimeter tool in the Assessment aerial photo program[2]," there is a portion of the property that is not stocked and therefore does not "meet the minimum 2 acre statutory requirement for special assessment." Harper testified that the forester who concluded that the subject property was fully stocked did not "mean that the property qualified for special assessment." She concluded that the subject property is "the right size, but "[a] minimum of 0.19 acres of the subject property is utilized as driveway and turnaround, at the very least. *Page 3 
Unplanted area is closer to the 0.30 acre calculation, estimated per site inspection by appraiser." (Def's Appraisal Report at 4; Exs 16, 17 and 18.) Harper concluded that the subject property "falls short of the required minimum 2 acres held or used predominately (sic) to grow and harvest trees of a marketable species to qualify as designated forestland." (Def's Appraisal Report at 4.)
Harper testified that the highest and best use of the subject property is residential. She testified that the subject property is zoned RA-2 and provided the following explanation of "Residential-Agriculture-2 Zone (RA-2):"
 "The RA-2 zone is intended to accommodate the immediate foreseeable demand for very low density rural residential development where commitments to such uses have already been made through existing subdivision, partition or development, or in selected, small areas having unique scenic quality and other development that will not require more than the very basic level of service (fire protection or community water)."
(Def's Appraisal Report at 2.)
Harper testified that the subject property is located among single family residences and was at one time part of a 15.38 parcel that has over the years been subdivided into two or more acre parcels and some of those subdivided parcels have been divided again. (Def's Exs 1; 5.) She testified that each of the partitioned parcels "meets the minimum requirement of 2 acres for the RA-2 zone, or is slightly larger." (Def's Appraisal Report at 3.)
Harper testified that subject property's Declaration of Conditions and Restrictions (Declaration), recorded October 20, 2000, in Clatsop County, states that "Mike and Amie Saarheim shall be allowed to build a shop building on both of the parcels that they purchased. * * * The shop shall be inconspicuously placed in relationship to all other dwellings or potential dwellings." (Def's Ex 10.) Citing the court's decision inPrahar v. Dept. of Rev. (Prahar), 13 OTR 232, 234-235 (1995), Harper read: "It is possible for land with no current use *Page 4 
or with another current use to be held for future forest use and qualify as forestland. In a converse situation, land with trees on it, but which is being held for residential purposes or development is not necessarily forestland." Harper concluded that it is the Saarheims' "intent to develop [the] property" and to "build a nice residential shop that conforms to the look of the single family dwelling." (Def's Ex 10; Def's Appraisal Report at 5.)
 II. ANALYSIS
Plaintiffs appeal Defendant's disqualification of their land from designated forestland special assessment. When the legislature enacted the special assessment of western Oregon forestland, the program was established "as a means of:
 "(a) Recognizing the long-term nature of the forest crop and fostering the public policy of Oregon to encourage the growing and harvesting of timber.
 "(b) Protecting the public welfare by assuring that the citizens of the state and future generations shall have the benefits to be derived from the continuous production of forest products from private forestlands."
ORS 321.262.[3]
To qualify for special assessment, the following statutory definition of forestland must be met:
 "land in western Oregon that is being held or used for the predominant purpose of growing and harvesting trees of a marketable species and has been designated as forestland or land in western Oregon, the highest and best use of which is the growing and harvesting of such trees."
ORS 321.257(2).
The parties agree that Plaintiffs' land, which is described by Defendant as "RA-2 zoned neighborhood," is, or is capable of, growing trees of a marketable species. The parties dispute whether the subject property's "highest and best use" is the "growing and harvesting of such trees" and whether the subject property meets the minimum stocking requirements. *Page 5 
Looking first to the highest and best use of the subject property, there is no dispute that trees have been growing since the 1970s. There is no dispute that the trees have not been harvested since that time except for storm-damaged trees. Saarheim's Plan shows that there is no immediate plan to harvest the property, but rather to "maintain a healthy valuable forest" and "manage it for the long term investment." (Ptfs' Plan at 4.) Plaintiffs' past, current, and continuing activity is the growing of trees with no recorded harvesting of trees. There has been no change in the subject property for many years. Plaintiffs' Plan, developed with the assistance of a consulting forester, states that the "forest is healthy" and can be cultivated for "merchantable timber." (Id.) The subject property's current standing time and potential to produce merchantable timber contrasts with the Prahar property that was represented to have Douglas Fir that was "marginally merchantable" and "a slow current growth rate" and cedar that was "expected to continue to decline as the disease [Phytophthora root rot] spread[s]." Prahar,13 OTR at 233.
The subject property is located in an area zoned "low density rural residential." (Def's Appraisal Report at 2.) The court has previously found that land approved for residential use can, among other factors, be incompatible with a "predominant purpose of growing and harvesting trees of marketable species." Prahar, 13 OTR at 235. The court concluded in Prahar that "[t]he fact that trees of marketable species may be growing on the property and may be harvested does not make the land forestland." Id. Saarheim negotiated at the time of his purchase a declaration allowing him to build a shop building on the subject property. Such a use would be contrary to "the predominant purpose of growing and harvesting trees of marketable species." ORS 321.257(2). *Page 6 
Land designated forestland can have concurrent compatible uses. Currently, Plaintiffs are allowing the standing timber to regenerate and mature. There has been no change in the use of the subject property since the early 1970s. Plaintiffs have the right to build a shop building on the subject property. Until such time as a structure is placed on the property that interferes with the primary or most important purpose of growing trees and harvesting timber, the subject property's predominant purpose remains the growing of trees and, at some point, the harvesting of mature timber.
Defendant's second concern is that the property fails to meet the minimum stocking requirements. Defendant concludes that 0.19 acres "is actually access driveway and cul-de-sac to the single family dwelling." (Def's Appraisal Report at 6.) Relying on 2005 photographs, Harper concluded that "the dwelling with attached garage valued with [lot] 80933D0-TL 4400 is encroaching upon the subject property, as well." (Id.) In reaching her conclusion, Harper seems to rely on ORS 321.358(4)(b), which states in pertinent part:
 "The county assessor shall not find land properly classifiable as forestland if:
 "* * *
 "(b) Subject to the provisions of ORS 321.257, the land does not substantially meet minimum stocking or acreage requirements under rules adopted by the department."
The word "substantially" appears prior to the "minimum stocking" requirement. ORS 321.358(4)(b). Substantially is not defined in the statute. Substantially is commonly defined as "having important or material matter, thing, or part." Webster's Third Int'l Dictionary 2280, (unabridged ed 2002). Defendant would like this court to conclude that, if 1.84 acres of a 2.03 acre parcel is stocked, it does not substantially meet the minimum stocking requirements. The court does not reach that conclusion. *Page 7 
 III. CONCLUSION
To qualify for forestland special assessment, the land must be "held or used for the predominant purpose of growing and harvesting trees of a marketable species." ORS 321.257(2). After careful review of the evidence, the court concludes that the subject property is being used for the predominant purpose of growing and harvesting trees and substantially meets the minimum stocking requirements. Plaintiffs' property qualifies for forestland special assessment. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is granted.
Dated this _____ day of June 2009.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Presiding Magistrate Jill A. Tanner onJune 24, 2009. The Court filed and entered this document on June 24,2009.
[1] The Plan is attached to a letter from Plaintiffs dated Jan 23, 2009. The page numbers include that letter as page 1.
[2] Harper testified that the aerial photographs were taken in 2005.
[3] Unless otherwise stated, references to the Oregon Revised Statutes (ORS) are to year 2007. *Page 1